1

2

3                                                        O

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11   TIME WARNER              )   Case No. EDCV 07-473-VAP
     ENTERTAINMENT - ADVANCE  )   (OPx)
12   / NEWHOUSE PARTNERSHIP   )
     d/b/a TIME WARNER CABLE, )   **[Motion filed on August 11,**
13   a New York general       )   **2008]**
     partnership,             )
14                            )   **ORDER GRANTING PLAINTIFF'S**
                 Plaintiff,   )   **MOTION FOR PARTIAL SUMMARY**
15                            )   **JUDGMENT AND DENYING**
        v.                    )   **DEFENDANTS' MOTION FOR**
16                            )   **SUMMARY JUDGMENT**
     STEADFAST ORCHARD PARK,  )
17   L.P., a California       )
     Limited Partnership;     )
18   CONSOLIDATED SMART       )
     BROADBAND SYSTEMS, LLC,  )
19   a California Limited     )
     Liability Corporation,   )
20   and DOES 1 through 10,   )
                              )
21                Defendants. )
     _____)
22

23

24       Defendants' Motion for Summary Judgment, as well as

25   Plaintiff's Motion for Partial Summary Judgment, came

26   before the Court for hearing on September 22, 2008.

27   After reviewing and considering all papers filed in

28   support of, and in opposition to, the Motions, as well as

     the arguments advanced by counsel at the hearing, the

Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

## I. BACKGROUND

**A.   Procedural History**

On March 29, 2007, Plaintiff Time Warner Entertainment -- Advance/Newhouse Partnership d/b/a Time Warner Cable ("TWC") filed a Complaint in California Superior Court for the County of Riverside, naming as Defendant Consolidated Smart Broadband Systems, LLC ("Consolidated").  On April 20, 2007, Consolidated removed the case to this Court.  On June 15, 2007, Plaintiff filed a First Amended Complaint for Damages and Injunctive Relief ("FAC"), which joined Steadfast Orchard Park, L.P. ("Steadfast") as a defendant and asserted eight claims:

> (1) Breach of Contract, against Steadfast;
> (2) Breach of Contract, against Steadfast;
> (3) Interference with Contract, against Consolidated;
> (4) Interference with Prospective Economic Advantage, against Consolidated and Steadfast;
> (5) Negligent Interference with Contract, against Consolidated;
> (6) Negligent Interference with Prospective Economic Advantage, against Consolidated and Steadfast;
> (7) Conversion, against Consolidated; and
> (8) Unjust Enrichment, against Consolidated and Steadfast.

///

///

2

(FAC at 8-16.)  On June 19, 2007, Plaintiff filed a
Motion for Preliminary Injunction, which the Court denied
on September 4, 2007.

Trial in this matter was initially set for July 29,
2008.  The parties filed several Motions in Limine on
June 30, 2008.  On July 3, 2008, Plaintiff filed an
Application to File Documents Supporting Plaintiff's
Motions in Limine Under Seal.  The Court denied the
Application on July 8, 2008.  On July 25, the Court ruled
on the Motions in Limine.  The Court: (1) granted
Defendants' Motion in Limine to Preclude References to
Any Contract Between Plaintiff and Steadfast; (2) denied
Defendants' Motion in Limine to Preclude References to
"Theft"; and (3) granted in part Defendants' Motion in
Limine to Preclude Any Alleged Pattern of Unfair
Behavior.  On July 25, the Court also (1) denied
Plaintiff's Motion in Limine to Preclude Argument and
Evidence re: FCC Regulations; (2) granted Plaintiff's
Motion in Limine to Exclude Evidence of Customer
Communications; and (3) granted Plaintiff's Motion in
Limine to Exclude Evidence Regarding Profanity.

At a pretrial conference on July 24, 2008, the Court
vacated the trial date and permitted the parties to file
motions for summary judgment.
///

1    Defendants Steadfast and Consolidated filed a Notice
2  of Motion and Motion for Summary Judgment ("Defs.'
3  Mot."), a supporting Memorandum of Points and Authorities
4  ("Defs.' Mem. P. & A."), a Proposed Statement of
5  Uncontroverted Facts and Conclusions of Law ("Defs.'
6  SUF"), and six (6) supporting declarations.  Plaintiff
7  filed an Opposition to the Motion for Summary Judgment
8  ("Pl.'s Opp'n"), as well as a Statement of Genuine Issues
9  of Material Fact ("Pl.'s SGIF").  On September 8, 2008,
10  Defendants filed a Reply Memorandum of Points and
11  Authorities in Support Defendants' Motion for Summary
12  Judgment ("Reply").

13

14    Plaintiff filed a Motion for Partial Summary Judgment
15  ("Pl.'s Mot."), along with a Memorandum of Points and
16  Authorities ("Pl.'s Mem. P. & A."), a Statement of
17  Uncontroverted Facts ("Pl.'s SUF"), and three (3)
18  supporting declarations.  Defendants filed an Opposition
19  to the Plaintiff's Motion for Partial Summary Judgment
20  ("Defs.' Opp'n").  On September 8, 2008, Plaintiff filed
21  a Reply to Defendants' Opposition to Motion for Partial
22  Summary Judgment ("Pl.'s Reply").

23

24  **B.  Factual Background**
25    This dispute revolves around several contracts
26  relating to the provision of cable television services at
27  ///

28

4

a Banning, California, apartment complex called Orchard Park.

### 1.   Uncontroverted Facts

The following material facts have been adequately supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion.  <u>See</u> Local R. 56-3.

Defendant Steadfast owns the Orchard Park apartment complex in Banning, California ("Orchard Park").  (<u>See</u> Pl.'s SUF ¶ 1.)

#### a.   1998 Contract between MediaOne and California Investors VI

In July 1998, Colony Communications d/b/a MediaOne entered into a ten-year contract with California Investors VI, then the owner of Orchard Park Apartments. (Pl.'s SUF ¶ 1; Barnes Decl. Ex. 2, Cable Television Installation and Service Agreement ("1998 Contract").)

Under the heading "Assignment," the parties agreed that the Contract would bind "successors and assign [*sic*], and runs with the land."  (Barnes Decl. Ex. 2, 1998 Contract ¶ 12; Pl.'s SUF ¶ 9.)

The 1998 Contract granted MediaOne and "its successors and assigns" a ten-year "irrevocable license

1  in gross" to gain access to Orchard Park to offer

2  services.  (Pl.'s SUF ¶ 2; Barnes Decl. Ex. 2, 1998

3  Contract  ¶¶ 2(a)-(b), 9.)  In fact, the 1998 Contract

4  gave MediaOne both the right and the obligation to offer

5  cable television services to Orchard Park residents.

6  (Barnes Decl. Ex. 2, 1998 Contract ¶¶ 3, 2(c).)

7

8      Under the 1998 Contract, MediaOne "own[ed] and

9  operat[ed] a cable television system" in Orchard Park.

10  (<u>Id.</u> at recitals.)  MediaOne had ownership of all cable

11  equipment and facilities, as well as the right to remove

12  any of it.[1]  Finally, the 1998 Contract gave MediaOne the

13

_____

14      [1]The Contract defined "Equipment and Facilities" as:

15      "all property installed and/or used in the
        distribution of the SERVICE (hereinafter

16      described) and broadband communication
        service at the PROPERTY, including

17      equipment and appurtenances reasonably
        necessary or useful, or which may become

18      necessary or useful . . . for furnishing
        broadband communications services which

19      COMPANY may from time to time provide to
        the PROPERTY . . . ."  (Barnes Decl. Ex. 2,

20      1998 Contract ¶ 4.)

21  The 1998 Contract further provided:
        "Title to the System and all of the equipment

22      and facilities associated therewith shall be
        and remain vested with COMPANY and no part of

23      the System shall be deemed a fixture.  No
        person or entity, including OWNER, shall

24      acquire any rights in or to the System or
        shall in any way move, disturb, alter or

25      change any of COMPANY's equipment and
        facilities or attach, directly or indirectly,

26      in whole or in part, any equipment or device
        to the System without the prior written

27      consent of COMPANY."  (Barnes Decl. Ex. 2,
        1998 Contract ¶ 4.)

28

1  right to "remove any or all of its Equipment"; any
2  deactivated equipment would remain the property of
3  MediaOne.  (<u>Id.</u> at ¶ 11.)

4

5     Barring "Acts of God" and the like, termination of
6  the 1998 Contract could only take place upon sixty days'
7  written notice from MediaOne if the latter was unable to
8  continue serving the Orchard Park complex because of
9  laws, rules, regulations, a court judgment, or "any
10  similar reason beyond the reasonable control" of
11  MediaOne.  (<u>Id.</u> at ¶¶ 10, 21.)  The 1998 Contract did not
12  provide for unilateral termination of the contract by the
13  owner of Orchard Park.  (<u>Id.</u>)

14

15          **b.   1999 Asset Exchange Agreement**
16     In 1999, a Time Warner Cable affiliate, Summit Cable
17  Services of Georgia, Inc., obtained rights to the 1998
18  Contract by executing an Asset Exchange Agreement with
19  MediaOne. (Pl.'s SUF ¶¶ 12-14; Declaration of Steven T.
20  Coopersmith in Support of Time Warner Cable's Motion for
21  Partial Summary Judgment ("Coopersmith Decl.") ¶¶ 2, 7,
22  Ex. 7, Declaration of Valerie Tyler ("Tyler Decl.") ¶ 1,
23  Ex. 1, Asset Exchange Agreement 1.)[2]  All contracts not
24  specifically excluded in the 1999 contract were
25  transferred to the Time Warner Cable affiliate.  (Pl.'s

26  _____

27       [2]The Court overrules objections to the portions of
   the Coopersmith and Tyler Declarations to the extent that
28  they are cited here.

SUF 20.)  The 1999 Asset Exchange Agreement excluded no Multi-Dwelling Units ("MDU"), and Orchard Park is an MDU. (Pl.'s SUF 20-21; Tyler Decl. Ex. 1, § 2.1.)

### c.  2001 Asset Purchase Agreement

On June 14, 2001, TWC obtained rights to the 1998 Contract through an internal restructuring agreement executed between Summit and TWC.  (Pl.'s Mem. P. & A. 6; Pl.'s SUF ¶¶ 12, 22-24.)  The interests transferred by the contract included those affected by the Asset Exchange Agreement between MediaOne and Summit, including cable systems in Banning, California. (Pl.'s SUF ¶¶ 24-27; Tyler Decl. Ex. 2, Asset Purchase Agreement, recitals, Art. 1.1.)

### d.  2003 Real Estate Purchase Agreement

On January 13, 2003, Steadfast Properties and Development, Inc.[3] executed a contract with California Investors VI for the purchase of Orchard Park.  (Pl.'s SUF ¶ 29; Declaration of Ana Marie Del Rio ("Del Rio Decl.") Ex. 1, Real Estate Purchase Agreement ("Purchase Agreement") at 15-39.)

///
///

---

[3] Steadfast Properties and Development, Inc. and Steadfast L.P. are different entities.  These two Steadfast entities executed an agreement between themselves on June 3, 2003, discussed below.

1    The agreement expressed Steadfast's "wishes to
2  purchase the Apartment Development on the terms provided
3  in this Agreement." (<u>Id.</u> at 1.)  Steadfast "disclaim[ed]
4  all warranties," stated that it was an experienced
5  purchaser, accepted the property "as is," and agreed to
6  accept adverse economic conditions not revealed by its
7  investigations.  (<u>Id.</u> at ¶ 9(c).)

8

9    Steadfast bought the complex, including California
10 Investors VI's "right, title, and interest" "under all
11 contracts to which Seller is a party relating to the
12 operation, maintenance or management of the Property,
13 including any agreements for . . . cable television . . .
14 (collectively, the 'Service Contracts')." (Defs.' SUF ¶¶
15 26-27; Pl.'s SUF ¶ 30; Del Rio Decl. Ex. 1, Purchase
16 Agreement ¶ 2(E)).

17

18   The Purchase Agreement required Steadfast to deposit,
19 before the close of escrow, "an instrument (the
20 'Assumption'), executed by Buyer, assuming Seller's
21 obligations under all Leases and Service Contracts . . .
22 ." (Del Rio Decl. Ex. 1, Purchase Agreement ¶ 5(c)(iii);
23 Defs.' SUF ¶ 28.)

24

25     **e.   2003 Amendments to the Purchase Agreement**
26   On February 20, 2003, Steadfast and California
27 Investors VI executed the First Amendment of Real Estate
28

9

Purchase Agreement.  (Coopersmith Decl. Ex. 3, First Amendment ("First Am.") ¶ 2(a).)  The First Amendment modified some provisions of the Purchase Agreement, did not mention cable services, and otherwise affirmed all terms of the Purchase Agreement.  (Id. at ¶¶ 1, 2(a).)

On April 10, 2003, Steadfast and California Investors VI executed the Second Amendment of Real Estate Purchase Agreement.  (Coopersmith Decl. Ex. 4, Second Amendment ("Second Am.").)  It changed some provisions of the Purchase Agreement, did not mention cable television, and otherwise affirmed all terms of the Purchase Agreement. (Id. at ¶¶ 1, 2(a).)

### f.  2003 Agreement Between Steadfast Entities

On June 3, 2003, Steadfast Properties and Development, Inc. transferred all its interest in the Orchard Park property to Steadfast Orchard Park, L.P. The assignee Steadfast entity assumed all the obligations previously incurred by the assignor.  (Defs.' SUF ¶¶ 41-42; Barnes Decl. Ex. 3 recitals.)

///

///

///

///

///

### g. "Assignment & Assumption of Contracts, Intangibles, Warranties and Plans"

Later in 2003,[4] pursuant to paragraph 5(c)(iii) of the Purchase Agreement, Steadfast executed the "Assumption & Assignment of Contracts, Intangibles, Warranties and Plans." (Defs.' SUF ¶¶ 30-31; Pl.'s SGIF ¶ 4; Coopersmith Decl. Ex. 5, Assignment and Assumption of Real Estate Purchase Agreement ("Assumption").) Under the Purchase Agreement, Steadfast was to assume "all Leases and Service Contracts" in the Assumption. (Del Rio Decl. Ex. 1, Purchase Agreement ¶ 5(c)(iii).)

The Assumption on its face and as executed does not appear to comply with the requirements of Purchase Agreement paragraph 5 (c) (iii). (See Coopersmith Decl. Ex. 5, Assumption.) The title of the Assumption complies with the Purchase Agreement: it includes "contracts." The text of the Assumption, however, appears to stray from the requirements of the Purchase Agreement: it does not mention any contracts. Instead, it lists other categories mentioned at Purchase Agreement paragraph 5(c)(iii), including warranties, permits,

---

[4]The Assumption does not have a date. Defendants claim it was executed after the assignment between the two Steadfast entities. (Second Supplemental Declaration of Ana Marie Del Rio ("Second Supp. Del Rio Decl.") ¶ 5.) Plaintiff objects that Del Rio lacks personal knowledge and her statement is speculative. (Plaintiff's Evidentiary Objections to Second Supplemental Declaration of Ana Marie Del Rio ¶ 2.) The Court sustains this objection.

intangibles, and plans.  (Defs.' SUF ¶¶ 31-32;
Coopersmith Decl. Ex. 5, Assumption at Title, ¶ 1(d).)
In the text of the Assumption, Steadfast expressly
assumed all the obligations of the items listed therein.
(Coopersmith Decl. Ex. 5, Assumption ¶ 3.)

### h.  Steadfast's Due Diligence Investigation

As part of the 2003 purchase of Orchard Park,
Steadfast performed a "due diligence" investigation.
(Defs.' SUF ¶ 47.)  Steadfast's normal due diligence
efforts include searching for cable television contracts.
(Defs.' SUF ¶ 48.)[5]

When Orchard Park was sold to Steadfast, cable
service was provided by Plaintiff TWC.  (Pl.'s SUF ¶ 28.)
Pedestals, as well as lockboxes and associated equipment,
would have been visible on the Orchard Park grounds.
(See Declaration of Ronald DiGrandi ("DiGrandi Decl.") ¶
5[6]; Declaration of Michael Sagona in Support of
Plaintiff's Reply to Defendants' Opposition to

---

[5]At the hearing on September 22, 2008, Defendants'
counsel argued that Steadfast asked the Orchard Park
property manager whether there was a contract for cable
television services at Orchard Park as part of
Steadfast's due diligence investigation, and that the
property manager indicated that there was no such
contract.  A review of the evidence submitted discloses
no basis for this statement.

[6]Defendants object that DiGrandi is drawing legal
conclusions.  The Court relies on the declaration only to
the extent that it describes facilities at Orchard Park.

Plaintiff's Motion for Preliminary Injunction ("Sagona Reply Decl.") ¶¶ 6-9, 11-12 Ex. 1-2.)[7]

### i.   TWC Service to Orchard Park

On June 10, 2003, TWC's computerized records show that someone from Orchard Park's Leasing Office called TWC Desert Cities to order internet service for the office.  (Pl.'s SUF ¶ 35; Declaration of Patti Johnson ("Johnson Decl.") ¶ 6, Ex. 2.)[8]  From June 17, 2003 to December 2006, Steadfast's Orchard Park office received monthly invoices from Time Warner Cable Desert Cities. (Pl.'s SUF ¶ 36; Johnson Decl. Ex 1.)  TWC's summary of its computerized records indicate that personnel from Orchard Park requested service or repairs for Orchard Park in 2003, 2005, and 2006. (Johnson Decl. ¶ 6, Ex. 2; Pl.'s SUF ¶¶ 38-41.)

### j.   2006 Change in Service to Orchard Park

In late 2004 or early 2005, Defendant Steadfast began discussing replacement of TWC's services with Consolidated.  (Del Rio Decl. ¶ 14.)  Steadfast never contacted the TWC Desert Cities office about this change.

---

[7]Submitted July 31, 2007 in support of Plaintiff TWC's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction.

[8]Defendants object to the information cited here as hearsay or inadmissible business records (Defs.' Obj. to Evidence Submitted in Support of Pl.'s Mot. 2.) The Court overrules the objection.

(Declaration of Steven T. Coopersmith in Support of Time
Warner Cable's Opposition to Defendants' Motion for
Summary Judgment ("Coopersmith Opp'n Decl.") Ex. B,
Defs.' Admis. No. 14.)  In January 2005, Steadfast (with
Consolidated's assistance) sent a letter by certified
mail to TWC's Los Angeles office stating its belief that
there was no contract between them, and TWC was providing
services to Orchard Park residents on a month-to-month
basis.  (Del Rio Decl. ¶¶ 17-19, Ex. 2.)  The letter
indicated that Steadfast intended to grant Consolidated
access to the property pursuant to FCC regulations, and
went on to state that TWC could either remove, sell, or
abandon its existing inside wiring.  (Id. ¶¶ 18-19, Ex.
2.)  No response to this letter was received.  (Id. ¶
24.)  In February 2006, Steadfast and Consolidated
entered into a contract granting Consolidated the
exclusive right to provide television programming
services at Orchard Park.  (Id. ¶¶ 28, 31.)

    After the new contract was executed, Consolidated
disconnected TWC's equipment, installed its own
equipment, and began transmitting its own signal in
Orchard Park in December 2006.  (Hernandez Decl. ¶¶ 2, 7;
Coopersmith Opp'n Decl. Ex. D, Sagona Decl. ¶ 1.)
///
///
///

14

1       In July 2008 the Contract between MediaOne and
2   California Investors VI expired.  (Barnes Decl. Ex. 2,
3   1998 Contract ¶ 9.)

4

5       **2.   Disputed Facts**
6           **a.   Recording of the 1998 Contract**
7   Defendants seek to establish that the 1998 Contract
8   between California Investors VI and MediaOne does not
9   bind Defendants because it was not recorded.  (Defs.' SUF
10  ¶ 93.)  Defendants filed a Request for Judicial Notice of
11  Plaintiff's Lack of A Real Property Interest on July 24,
12  2008 ("Request for Judicial Notice").  Plaintiff argues
13  that Steadfast's alleged failure to find the 1998
14  Contract during its due diligence investigation does not
15  show that the contract was not recorded.  (Pl.'s SGIF ¶
16  8.)  Plaintiff filed an Opposition to Defendants' Request
17  for Judicial Notice on August 25, 2008.  This dispute
18  over the Contract's recordation is relevant to the bona
19  fide purchaser defense to the breach of contract and
20  conversion claims.

21

22      Judicial notice is proper where facts are generally
23  known or easily determined from sources the accuracy of
24  which cannot reasonably be questioned.  Fed. R. Evid.
25  201(b).  Facts in public records are suitable for
26  judicial notice.  <u>Metropolitan Creditors' Trust v.</u>
27  ///

28

1    PriceWaterHouseCoopers, 463 F. Supp. 2d 1193, 1197 (E.D.
2    Wash. 2006).

3

4         **"**To prove the absence of a record" however, the
5    Federal Rules of Evidence provide a different procedure.
6    "To prove the absence of a record" the proponent should
7    submit "evidence in the form of a certification in
8    accordance with [Federal] [R]ule [of Evidence] 902 or
9    testimony, that diligent search failed to disclose the
10   record, report, statement, or data compilation, or
11   entry."  Fed. R. Evid. 803(10).

12

13        Here Defendants seek to establish the absence of the
14   1998 Contract in a public record.  As production of the
15   necessary county records would be onerous, they refer to
16   a privately-obtained preliminary title report. (Request
17   for Judicial Notice 2; Del Rio Decl. Ex. 1.)  The title
18   report document is not suitable for judicial notice as it
19   is not a public record or otherwise beyond reasonable
20   dispute.  Defendants do not cite to any cases where such
21   a document has been the subject of judicial notice, nor
22   has the Court's research uncovered such authorities. (Id.
23   at 2-4.)  The correct procedure for establishing failure
24   to record is therefore submission of the title report and
25   a statement that a diligent search failed to disclose the
26   1998 Contract.  See Fed. R. Evid. 803(10).  Here
27   Defendants have submitted such materials and the Court

28

16

considers them as evidence, simply not as matters
warranting judicial notice.  Plaintiff has not produced
evidence to show affirmatively that the Contract was
recorded.

    In any event, whether or not the 1998 Contract was
recorded, Steadfast was not a bona fide purchaser for the
reasons discussed below.

### b.   Results of the Due Diligence Investigation

    According to Defendants, Steadfast created a file
folder for cable contracts during its due diligence
investigation, and at the end of the investigation, the
folder was empty.  (Defs.' SUF ¶ 48; Supplemental
Declaration of Ana Marie Del Rio ("Supp. Del Rio Decl.")
¶ 7, Ex. 2.)

    Plaintiff objects that this evidence of Steadfast's
efforts lacks foundation and is unreliable because there
is no indication that the file folder was created at the
same time as the due diligence investigations.
(Plaintiff's Evidentiary Objections to the Supplemental
Declaration of Ana Marie Del Rio ¶ 2.)  The Court
overrules this objection.
///

1

### c.   Likelihood that Service at Orchard Park was Provided on a Month-to-Month Basis

2

Defendants claim that month-to-month cable television service was sufficiently prevalent in the market around Orchard Park that Steadfast had a reasonable belief that TWC provided cable service on a month-to-month basis at Orchard Park.  (Defs.' SUF ¶¶ 52-53; Second Supplemental Declaration of Ana Marie Del Rio ("Second Supp'l Del Rio Decl.") ¶¶ 11-12.)  Plaintiff objects to these assertions as improper lay or expert opinion testimony. (Plaintiff's Evidentiary Objection to Second Supplemental Declaration of Ana Maria Del Rio ¶ 6.)  The Court sustains this objection.

### d.   Communications Regarding Change in Service at Orchard Park

The parties dispute who Steadfast did or did not contact at TWC regarding Steadfast's interest in changing the cable television arrangements at Orchard Park.[9]  The
///

---

[9] Defendants claim that Steadfast contacted TWC's Los Angeles Division and communicated with Stuart Costello. (DiGrandi Decl. ¶ 11; Del Rio Decl. ¶ 21.)  Costello disagrees with other TWC staff, namely Scott Koehler and Ronald DiGrandi, about whether Costello forwarded a January 2005 inquiry letter from Steadfast to the appropriate people at TWC Desert Cities.  (Declaration of Scott Koehler ("Koehler Decl.") ¶¶ 7-9; DiGrandi Decl. ¶¶ 11-12; Koehler Decl. ¶¶ 7-9.)  Both Koehler and DiGrandi were responsible for responding to requests about TWC contracts at various apartment complexes.  (Koehler ¶ 6; DiGrandi ¶ 9.)

Court need not resolve this issue in order to decide Plaintiff's motion for partial summary judgment.

## II. LEGAL STANDARD

Plaintiff filed a motion for "partial summary judgment," more properly construed here as one for summary adjudication because Plaintiff seeks the adjudication of certain issues rather than judgment on entire claims.  Summary adjudication "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  These standards are the same as for a motion for summary judgment. <u>See</u> <u>State of California v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998); <u>Castlerock Estates, Inc. v. Estate of Markham</u>, 871 F. Supp. 360, 363 (N.D. Cal. 1994).  A motion for summary judgment shall be granted when the moving party shows that "under the governing law, there can be but one reasonable conclusion as to the verdict."  <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

*Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *Celotex*, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  *Id.*

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.  *See also* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 14:144.

///

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

## III. DISCUSSION

Plaintiff seeks adjudication of the following issues:

1.  That TWC is the rightful successor-in-interest to MediaOne under the 1998 Contract;

2.  That Defendant Steadfast is the rightful successor-in-interest to the rights and obligations of California Investors VI under the 1998 Contract;

3.  That the FCC Regulations codified at 47 C.F.R. § 76.804(a) do not apply;

4.  That Steadfast was not entitled to terminate the 1998 Contract or TWC's irrevocable license; and

5.  That Steadfast may not assert the defense that it was a bona fide purchaser at trial.  (Pl.'s Mot. 2.)

///

///

21

Defendants seek summary judgment on each of Plaintiff's claims. (Defs.' Mot. 2.)

For the reasons set forth below, Plaintiff's motion for summary adjudication is GRANTED and Defendants' motion for Summary Judgment is DENIED.

**A.  Successors and Assigns Under the 1998 Contract**

Plaintiff seeks to establish that the 1998 Contract between California Investors VI and MediaOne binds both Defendant Steadfast and Plaintiff TWC.  (See Pl.'s Mot. 2.)  Defendants assert that the burden of the 1998 Contract does not run to Steadfast, either explicitly or implicitly, and therefore they are entitled to summary judgment in their favor on Plaintiff's claims for breach of contract, intentional and negligent interference with contract, and intentional and negligent interference with prospective economic advantage. (Defs.' Mem. P. & A. 10-12.)  If Plaintiff can demonstrate the burdens and benefits of the 1998 Contract run to Steadfast and TWC, respectively, then it can show that Steadfast was not entitled to terminate the 1998 Contract by granting Consolidated exclusive access to the Orchard Park property.  As the Court grants Plaintiff's motion for partial summary judgment, it denies Defendants' request for summary judgment on claims one through six.

Breach of contract is the wrongful failure to perform a contract.  The parties agree that California courts determine the meaning of a contract, including whether it binds successors and assigns, by examining the parties' intent at the time of contracting, as shown by acts, subject matter, and words.  Cal. Civ. Code § 1636; Weidner v. Zieglar, 218 Cal. 345, 349 (1933); Enterprise Leasing Corp. v. Shugart Corp., 231 Cal. App. 3d 737, 745 (1991); Defs.' SUF ¶¶ 14-15; 7 California Jurisprudence 3d Assignments § 18.  "Such intent is to be inferred, if possible, solely from the written provisions of the contract . . . .  If contractual language is clear and explicit, it governs."  Powerine Oil Co., Inc. v. Superior Court, 37 Cal. 4th 377, 390 (2005) (internal citations omitted); Cal. Civ. Code §§ 1639.

### 1.  Successor in interest to California Investors VI

Where a contract states that it shall be binding on successors and assigns, "[n]o express assumption of those obligations by an assignee [is], therefore, necessary." Brady v. Fowler, 45 Cal. App. 592, 595 (1920); see also Weidner, 281 Cal. 345, 349; 7 California Jurisprudence 3d Assignments § 18.

The burdens of the 1998 Contract run to Defendant Steadfast under both the terms of the 1998 Contract and

the 2003 Purchase Agreement.  Plaintiff has produced sufficient evidence to show that Steadfast will not be able to support its contention that it was a bona fide purchaser.

### a.   Intent to Bind Successors and Assigns

The meaning of contracts is to be inferred, to the greatest extent possible, from the text of the contract. Powerine, 37 Cal. 4th 390.  The plain language of the 1998 Contract shows the parties' intent to bind successors and assigns.  At Paragraph twelve of the contract it states: "[t]his Agreement shall be binding upon OWNER and COMPANY, their successors and assign [*sic*], and runs with the land."  Under California law, this is sufficient to bind Steadfast and TWC to the 1998 Contract unless Steadfast can benefit from an affirmative defense.  See Brady, 45 Cal. App. at 595; see also Weidner, 218 Cal. at 350.

Defendants' attempt to avoid the passage of the burdens of the 1998 Contract absent Steadfast's express assumption of them might succeed if the common law rule applied, but it is doomed to fail under California's rule.  See Enterprise, 231 Cal. App. 3d at 745 (distinguishing California and common law rules). Furthermore, Defendants' reliance on Enterprise to argue

that the 1998 Contract does not bind Steadfast is
misplaced.  <u>Enterprise</u> only discusses the requirement of
an explicit assumption of the burdens of a contract for a
real estate lease, but not the requirements for a real
estate sale.  <u>Id.</u> at 745, 746.  In other words,
<u>Enterprise</u> is distinguishable on its facts and does not
control.


### b.    Intent to Assume Obligations

     The terms of the 2003 Purchase Agreement strengthen
the conclusion that the 1998 Contract is binding on
Steadfast.  The first section of the Purchase Agreement
explicitly establishes that it expresses Steadfast's
"wishes" to buy Orchard Park "on the terms provided in
this Agreement." (Del Rio Decl. Ex. 1, Purchase Agreement
at 1.)  The Purchase Agreement, then, expresses
Steadfast's intent.  <u>See</u> <u>Powerine</u>, 37 Cal. 4th at 390.


     In the body of the Purchase Agreement, Steadfast
"agrees to purchase . . . all right, title and interest
of [California Investors] . . . under all . . .
agreements for . . . cable television . . . ."  (Del Rio
Decl. Ex. 1, Purchase Agreement ¶ 2(E)).  The plain
meaning of this language is that Steadfast agreed to buy
the Orchard Park complex subject to any cable television
contract that might be in place.  <u>See</u> <u>Powerine</u>, 37 Cal.

4th at 390.   Steadfast reaffirmed this commitment in the First and Second Amendments to the Purchase Agreement when it confirmed all terms not explicitly modified by the amendments. (Coopersmith Decl. Ex. 3, First Am. ¶ 2(a); Coopersmith Decl. Ex. 4, Second Am. ¶ 2(a).)   This demonstrates that, although Steadfast did not explicitly assume the obligations of the 1998 Contract as such, it intended to assume the burdens of any such contract at Orchard Park in the Purchase Agreement.   See Brady, 45 Cal. App. at 595; Powerine, 37 Cal. 4th at 390.


### c.   Effect of the Assumption

Defendants argue that Steadfast is not bound by the 1998 Contract because it did not expressly assume those obligations under the terms of the Purchase Agreement. Alternatively, they contend that even if Steadfast had done so, any expressed intent to assume the burdens of a cable television contract was thwarted by the language of the Assumption.   These arguments are unpersuasive.   The language of the 2003 Purchase Agreement clearly reveals Steadfast's intent to assume "all contracts . . . relating to the operation, maintenance or management of the Property . . . .,"  not merely those listed in the Assumption.   (Del Rio Decl. Ex. 1, Purchase Agreement ¶ 2(E) (emphasis added)).   The Court  "will not rewrite the ///

[contract] to insert a provision that was omitted."
<u>Powerine</u>, 37 Cal. App. 4th 401.


It is undisputed that the Assumption says "contracts" in the title but does not list specifically any contracts in its text. (Coopersmith Decl. Ex. 5, Assumption.) Defendants assert that the omission of the 1998 Contract from the text of the Assumption amended the Purchase Agreement to exclude cable television contracts from the obligations that Steadfast would assume. (Defs.' Opp'n 13.) Defendants' interpretation of the Assumption as an amendment is untenable. The parties had demonstrated they knew how to amend the contract – they executed two amendments before they entered into the Assumption and when they did so, they stated the document was "an amendment" to the Purchase Agreement. (Coopersmith Decl. Ex. 3, First Am. para. 1; Coopersmith Decl. Ex. 4, Second Am. para. 1.) The Assumption does not say that it is an amendment, however, and the Court declines to construe it as one. See <u>Powerine</u>, 37 Cal. 4th at 390.


This construction does not rise to a requirement that parties recite "amendment" as a meaningless but magical word; rather, it interprets the intent of the parties through their words. (<u>Contra</u> Defs.' Opp'n 11-12); <u>see</u> <u>Powerine</u>, 37 Cal. 4th at 390. In any case, Defendants admit that the Assumption may have been executed

27

incorrectly: "there appears to be a discrepancy between what was originally contemplated by the Purchase Agreement to be assumed and what is actually in the Assumption Agreement." (Defs.' Mem. P. & A. 6.) In other words, the purpose of the Assumption was to comply with, not amend, the original document. This further supports the conclusion the Assumption should not be read as an amendment to the Purchase Agreement. See Powerine, 37 Cal. 4th at 390.[10]

In sum, the terms of the 1998 Contract show an intent to bind successors and assigns. See Brady, 45 Cal. App. at 595; see also Weidner, 218 Cal. at 350. Steadfast, in the 2003 Purchase Agreement, intended to assume all benefits and burdens of any cable contract at Orchard Park. See Powerine, 37 Cal. 4th at 390. Defendant Steadfast therefore is bound to the burdens of the 1998 Contract unless it can establish that it purchased the Orchard Park complex as a bona fide purchaser.

**2. Bona Fide Purchaser Defense**

Steadfast argues that the 1998 Contract does not bind it because it had no reason to know of the Contract's

---

[10]Defendants' argument, advanced at the September 22, 2008 hearing, that the Assumption governs is unpersuasive because it fails to account for the language of the Purchase Agreement showing Steadfasts's intent to assume all burdens of contracts at Orchard Park.

28

existence when it executed the Purchase Agreement.
(Defs.' Mem. P. & A. 9; Defs.' SUF ¶¶ 90, 93.)  Steadfast
argues that it "normally looks for cable contracts" and
that at the end of its due diligence investigation at
Orchard Park it had an empty cable contracts folder.
(Defs.' SUF ¶ 48.)  Steadfast alleges these facts were
consistent with provision of cable services to the
apartment complex without a contract; in other words,
Steadfast asserts that it was a bona fide purchaser.


###     i.   Information Sufficient to Defeat Bona Fide
             Purchaser Defense

A bona fide purchaser obtains title without notice of
a prior unrecorded interest.  See Kowalsky v. Kimberlin,
173 Cal. 506, 510 (1916).  Unrecorded interests are
invalid against a bona fide purchaser.  See id. at 510-
11; Cal. Civ. Code § 1217.  One with actual or
constructive notice of a contract is not a bona fide
purchaser.  See Kowalsky, 173 Cal. at 510-11; Cal. Civ.
Code § 1217.


Very little information is necessary to give actual
or constructive knowledge to a purchaser sufficient to
defeat a bona fide purchaser defense.  "Actual notice may
attach if a subsequent encumbrancer is told of the prior
interest, hears it discussed, or sees a document
referring to the interest."  In re Yepremian, 116 F.3d

1295, 1296 (9th Cir. 1997) (per curiam) (citations
omitted, applying California law).  A purchaser with
actual knowledge sufficient to require inquiry obtains
constructive knowledge of what a (reasonable) search
would have discovered.  California Civil Code § 19; First
Fidelity Thrift & Loan Ass'n v. Alliance Bank, 60 Cal.
App. 4th 1433, 1436-37, 1444-46 (1998) ("A prudent
purchaser is charged with knowledge of information that a
reasonable inspection of the property would have
revealed."); Yepremian, 116 F.3d at 1296.


    The duty to inspect, and the kind of knowledge
sufficient to defeat a bona fide purchaser defense in the
context of the purchase of a business, is illustrated by
Gregers v. Peterson Ice Cream Company, Inc., 158 Cal.
App. 2d. 746 (1958).  In Gregers, the plaintiffs
contracted with a party named Peterson for the purchase
of dairy products.  Id. at 751.  Defendant bought
Peterson's business in a contract that did not
specifically mention the Gregers contract, although
Defendant knew that one existed.  Id. at 749.  Defendant
then sought to escape the burdens of the Gregers
contract, claiming it did not intend to assume them
because the Gregers contract was not listed in the
instrument by which defendant purchased Peterson's
business.  See id. at 749.
///

The California Court of Appeal found that defendant was bound by the Gregers contract.  <u>Id.</u> at 751.  The circumstances were such that defendant should have known of the contract: defendant "knew that Gregers were customers . . . in purchasing Peterson's business they were obligated to make some inquiry, if they had not already been told, to learn the terms under which the Gregers were on Peterson's list of customers."  <u>Id.</u> at 751.

### ii. Steadfast's Knowledge

Plaintiff has met its burden of establishing that Steadfast should not be able to assert the defense that it was a bona fide purchaser.  Plaintiff has provided evidence that will preclude Steadfast from showing that it had (1) no reason to know a contract with TWC to provide cable television services existed and (2) no reason to inquire further.

First, the Purchase Agreement explicitly listed "cable television" and stated that Orchard Park was transferred "as is."  (Del Rio Decl. Ex. 1, Purchase Agreement ¶ 9(c).)  Although Steadfast argues that mention of a cable television contract was common in real estate contracts (at an unspecified date) and does not prove that such a contract existed (Defs.' Opp'n 14 n.6),

the mention of such a contract in the Purchase Agreement
tends to demonstrate Steadfast's awareness that a cable
contract might well exist at Orchard Park.  This is
sufficient to confer on Steadfast constructive knowledge
of what inquiry into the contract would have discovered.
(Del Rio Decl. Ex. 1, Purchase Agreement ¶ 9(c)); see
Yepremian, 116 F.3d at 1296; Gregers, 158 Cal. App. 2d at
751; Cal. Civ. Code § 19.

     Furthermore, at the time of purchase, an inspection
of Orchard Park would have revealed the presence of TWC
pedestals and lockboxes, if not inside wiring and an
underground conduit, obvious indications that cable
television services were provided.  (See Pl.'s SUF ¶ 28
(continuous provision of service); Defs.' SUF ¶ 67
(conduit, wiring, pedestals and lockboxes as cable
equipment at Orchard Park).)

     Defendants cite First Fidelity to support their
argument that the law requires only a reasonable inquiry
and that Steadfast's due diligence efforts met this
standard.  (Defs.' Opp'n 21); First Fidelity, 60 Cal.
App. 4th at 1445.  Steadfasts's inquiry does not measure
up to that found sufficient in First Fidelity.  See 60
Cal. App. 4th at 1436-37; 1440.
///

In <u>First Fidelity</u> the Court found the claimant's obligation to make a reasonable investigation was discharged once claimant sought out an explanation of discrepancies in loan documents.  <u>See</u> <u>id.</u> at  1440, 1436-37.  By contrast, Steadfast never sought an explanation in the face of an allegedly empty file folder and California Investors VI's failure to produce a cable television services contract.  It is undisputed that Steadfast never contacted TWC's Desert Cities office during the course of the due diligence investigation; a call to that office could have revealed the existence of the 1998 Contract.  (<u>See</u> Koehler Decl. ¶¶ 5-6; DiGrandi Decl. ¶¶ 9, 10 (persons at TWC who checked contracts for apartment buildings).)  Given all the circumstances present here, if Steadfast assumed that there was no cable television contract covering the Orchard Park premises, it did so at its own risk.[11]  As explained in <u>First Fidelity</u>, Defendant Steadfast had an obligation to resolve the discrepancy between the empty folder and the obvious presence of cable service at Orchard Park.  As a purchaser of property, Steadfast had a duty to inspect

---

[11]Defendants also seek to evade the burdens of the 1998 Contract by arguing that California Investors VI never gave them the contract.  (Defs. Mem. P. & A. 6-7.) This contention lacks merit.  The 2003 Purchase Agreement provides that Steadfast will conduct all inspections and investigations it deems necessary regarding all matters relevant to Orchard Park and that it will accept the property subject to adverse economic conditions not revealed by its inspections and investigations.  (Del Rio Decl. Ex. 1, Purchase Agreement ¶ 9(c).)

1    the property under Cal. Civ. Code § 19.  According to

2    <u>Gregers</u>, Steadfast had a duty to determine the terms of

3    TWC's presence.  <u>See Gregers</u>, 158 Cal. App. 2d at 751;

4    <u>see also First Fidelity</u>, 60 Cal. App. 4th at 1436-37,

5    1440; <u>Yepremian</u>, 116 F.3d at 1297.[12]  Taken together,

6    these facts allow Plaintiff to demonstrate that Steadfast

7    will not be able to show that it did not know or have

8    reason to know of an outstanding cable television

9    contract when Steadfast purchased Orchard Park.

10

11          [12]Defendants' reliance on <u>Oakland Bank of Savings v.
     California Pressed Brick Company</u>, 183 Cal. 295, 302-03
12   (1920), for the proposition that a purchaser is not bound
     by an unrecorded contract, is misplaced.  In <u>Oakland
13   Bank</u>, the Court held a buyer of a manufacturing plant
     with "no knowledge or notice" that certain equipment was
14   a fixture to be a bona fide purchaser.  <u>Id.</u> at 297-98.
     <u>Oakland Bank</u> is distinguishable for at least two reasons.
15

16          First, the buyer in that case had "no knowledge or
     notice" whereas Steadfast, as demonstrated above, had
17   constructive knowledge and notice.  <u>See id.</u> at 297-98.

18          Second, the <u>Oakland Bank</u> court assumed that the
     seller of the disputed equipment had agreed that the
19   machines should be converted into real property.  <u>Id.</u> at
     302-03.  In contrast, here the 1998 Contract clearly
20   stated that the cable system would not become a fixture,
     as discussed below.  (Barnes Decl. Ex. 2, 1998 Contract
21   ¶¶ 4-11.)

22          Defendants also rely on <u>Unterberger v. Red Bull North
     America, Inc.</u>, 162 Cal. App. 4th 414, 421 (2008) but that
23   case is distinguishable as well.  (<u>See</u> Defs.' Mem. P. &
     A. 4.)  The writing at issue about the distribution of
24   beverages in <u>Unterberger</u>, if a contract, was not formally
     drawn up as one, and was "at will."  <u>Id.</u> at 420.  This
25   reflected the parties' intent for a far more fragile,
     temporary relationship than that shown by the 1998 and
26   2003 contracts here.  It therefore is not surprising that
     the <u>Unterberger</u> court declined to find that defendants
27   had sufficient knowledge of the obligations of the
     arrangement to be bound by it.  <u>See id.</u> at 420-21.

28

Accordingly, the Court finds that Defendant Steadfast is bound by the terms of the 1998 Contract.

### 3.   Successor in Interest to MediaOne

TWC is the proper successor-in-interest to MediaOne under the 1998 Contract because TWC obtained MediaOne's interest in the contract through two contracts, the first in 1999 and the second in 2001.  Plaintiff has carried its burden of demonstrating that no dispute of material fact exists regarding the existence or meaning of the contracts through which it obtained an interest in providing services to Orchard Park.  For the reasons set forth below, the benefits of the 1998 Contract run to TWC.

The first contract was executed in 1999 between a subsidiary of TWC, called Summit Cable Services of Georgia ("Summit"), and MediaOne.  (Pl.'s SUF 13-14.) Through the contract, called the Asset Exchange Agreement, the TWC affiliate obtained MediaOne's rights under the 1998 Contract.  (Pl.'s SUF ¶¶ 13-14; Tyler Decl. ¶ 1, Ex. 1, Asset Exchange Agreement at recitals, §§ 1.3, 2.1.); see Powerine, 37 Cal. 4th at 390.  All contracts not specifically excluded were transferred. (Pl.'s SUF ¶ 20; Tyler Decl. ¶ 1, Ex. 1, Asset Exchange Agreement §§ 1.3, 2.1.)  Orchard Park is an MDU  and no

MDUs were excluded.  (Pl.'s SUF ¶¶ 20-21; Tyler Decl. Ex.
1, Asset Exchange Agreement, §§ 1.3, 2.1., Schedule
2.1(c)(I).)


The second contract passing an interest in the 1998
Contract for cable television services at Orchard Park
was executed in 2001.  (Pl.'s SUF ¶ 22.)  Summit sold the
rights to the 1998 Contract to TWC, the Plaintiff in this
case.  (Pl.'s SUF ¶¶ 22-25; Tyler Decl. Ex. 2, Asset
Purchase Agreement at 1.)  Therefore, TWC obtained an
interest in providing cable television services at
Orchard Park.


**B.   Right to Terminate 1998 Contract**

Having found that the benefits and burdens of the
1998 Contract run to the parties in this case, the Court
now turns to the second issue that Plaintiff seeks to
have summarily adjudicated, i.e., whether Steadfast had
the right to terminate the 1998 Contract.


Plaintiff has shown that the 1998 Contract gave
MediaOne the right until 2008 to provide services and
bound Orchard Park management to permit the provision of
such services.  (Barnes Decl. Ex. 2, 1998 Contract ¶ 2.)
Termination of the 1998 Contract was not possible through
///

the unilateral decision of the owners of Orchard Park.
(See id. at ¶ 10.)


There is no dispute that in February 2006 Steadfast
entered into a contract giving Consolidated exclusive
access to Orchard Park to provide cable services.  (See
Del Rio Decl. ¶ 28.)  By demonstrating that the benefits
and burdens of the 1998 Contract ran to Plaintiff and
Defendant Steadfast, Plaintiff also has demonstrated that
Steadfast took action inconsistent with and unauthorized
by the 1998 Contract.  These actions had an impact on
Plaintiff's business.  The parties agree that in December
2006 Defendants Steadfast and Consolidated prevented TWC
from providing cable services to Orchard Park residents.
(Hernandez Decl. ¶¶ 7-8; see Del Rio Decl. ¶ 30.)
Plaintiff has established that termination of the 1998
Contract through the 2006 contract was wrongful.


To summarize, Plaintiff has demonstrated that the
benefits and burdens of the 1998 Contract bind Plaintiff
and Defendant Steadfast.  Accordingly, the Court grants
Plaintiff's first request for summary adjudication
because it finds that TWC is the successor in interest to
MediaOne under the 1998 Contract.  It grants Plaintiff's
second request for summary adjudication because it finds
that Steadfast is the successor in interest to California
Investors VI under the 1998 Contract.  The Court grants

1   Plaintiff's fifth request for summary adjudication

2   because it finds that Steadfast cannot assert a bona fide

3   purchaser defense at trial.  Also, as Plaintiff has shown

4   that Defendant Steadfast wrongly acted inconsistently

5   with the 1998 Contract, the Court grants Plaintiff's

6   fourth request for summary adjudication: it finds that

7   Steadfast was not entitled to terminate the 1998

8   Contract.

9

10      As discussed above, the Court has found that the 1998

11  Contract binds both Steadfast and TWC.  The Court

12  therefore denies Defendants' motion as to Plaintiff's

13  first, second, third, and fifth claims, that is, for

14  breach of contract, breach of contract (specific

15  performance), interference with contract, and negligent

16  interference with contract.

17

18

19      Defendants have also sought summary judgment on

20  Plaintiff's fourth and sixth claims, for interference

21  with prospective economic advantage and negligent

22  interference with prospective economic advantage,

23  respectively.  Defendants have the burden at the summary

24  judgment stage to demonstrate why Plaintiff will not be

25  able to succeed on these claims.  For Plaintiff to

26  succeed on either claim, Plaintiff would have to show

27  that, absent Defendants' actions, it would have enjoyed

28  ///

future economic relationships with Orchard Park residents.

Defendants have argued that Plaintiff will be unable to show that the 1998 Contract binds; from this Defendants argue that Plaintiff will fail at demonstrating a right to continue to enter Orchard Park and pursue commercial relationships with residents. (Defs.' Mem. P. & A. 10-12; Defs.' Reply 8-9.)  Here Plaintiff has shown the validity of the 1998 Contract. Therefore, Defendants' initial premise fails.  (See Defs.' Mem. P. & A. 10-12; Defs.' Reply 8-9.)  Defendants cannot carry their burden as to claims four and six with the arguments presented in support of their motion for summary judgment.  Although the Court does not grant Plaintiff Summary Judgment on claims four and six, it denies Defendants summary judgment on the same.

**C.   FCC Regulations**

Plaintiff seeks summary adjudication that the FCC Regulations codified at 47 C.F.R. § 76.804(a) do not apply.  These regulations provide procedures for the transfer of cable television wiring where a former cable television provider no longer has the right to remain on a property.  Id.  They do not apply where a cable television provider has a legal right to remain on the property.

1    As Plaintiff has demonstrated that it had the right
2  to remain at Orchard Park pursuant to the 1998 Contract,
3  the FCC regulations do not apply here.  Therefore, the
4  Court grants Plaintiff's third request for summary
5  adjudication and finds that the FCC Regulations codified
6  at 47 C.F.R. § 76.804(a) do not apply.
7
8
9  **D.   Remaining Claims**
10    The Court has granted Plaintiff's Motion for Partial
11  Summary Judgment.  This precludes summary judgment for
12  Defendants as to claims one through six, as described
13  above.  Defendants seek summary judgment on two remaining
14  claims: (1) for conversion, against Consolidated, and (2)
15  unjust enrichment, against Consolidated and Steadfast.
16
17    **1.   Conversion**
18
19    Plaintiff has alleged a claim for conversion against
20  Consolidated.  To recover on this claim, Plaintiff must
21  demonstrate ownership or a right to possess equipment at
22  Orchard Park and Defendant Consolidated's conversion by
23  wrongful act or disposition of Plaintiff's property
24  right.  See Burlesci v. Peterson, 68 Cal. App. 4th 1062,
25  1066 (1998).  A showing that the cable equipment,
26  including wiring and appurtenances, is a fixture would
27  defeat the conversion claim because it would indicate
28  ///

ownership of these items by Defendant Steadfast.  <u>See</u> Cal. Civ. Code §§ 660, 1013.

Although Plaintiff has not moved for summary judgment or adjudication on the conversion claim, Defendants seek summary judgment on it.  (Pl.'s Mot. 2; Defs.' Mot. 2.) Defendants therefore have the burden of demonstrating that judgment against Plaintiff is appropriate.  <u>See</u> Fed. R. Civ. P. 56.

Defendants have not carried their burden here.  The 1998 Contract governs the ownership of the cable system at Orchard Park and by its plain language grants Plaintiff title in the cable television system: "no part of the System shall be deemed a fixture. No person or entity, including OWNER, shall acquire any rights in or to the System . . . ."  (Barnes Decl. Ex. 2, 1998 Contract ¶ 4.)  The 1998 Contract broadly refuses the owner of Orchard Park any interest in "the System and all of the equipment and facilities associated therewith . . . ."  ( <u>Id.</u> ¶ 4.)  The contract's failure to define "System" is not fatal to Plaintiff's conversion claim because the contract language expresses a broad intent to vest title to the cable equipment and facilities at Orchard Park in MediaOne and its rightful successors (<u>contra</u> Defs.' Mem. P. & A. 21).  The 1998 Contract grants MediaOne the power to remove cable equipment,

1   which further undermines Defendants' argument.  (Barnes
2   Decl. Ex. 2, 1998 Contract ¶ 11.)  The cable system
3   provider's right to remove equipment is consistent with
4   ownership by MediaOne, and hence a conversion claim.  It
5   is inconsistent with the equipment's status as a fixture
6   and hence weighs against summary judgment for Defendants
7   on the conversion claim.  See Cal. Civ. Code §§ 660,
8   1013.

9

10      Finally, Defendants try to cast themselves as
11  "innocent purchasers" of Orchard Park in order to escape
12  liability for Plaintiff's conversion claim.  (Defs.' Mem.
13  P. & A. 16.)  As the Court found above that Defendants
14  were not bona fide purchasers, this defense fails here as
15  well.  Accordingly, the Court denies Defendants' motion
16  for summary judgment as to the conversion claim.
17

18

19      **2.  Unjust Enrichment**
20      Defendants purport to move for summary judgment on
21  all claims, but never discuss Plaintiff's eighth claim,
22  for unjust enrichment, in their motion.  Defendants, as
23  the moving parties, must show that they are entitled to
24  judgment as a matter of law.  See Fed. R. Civ. P. 56.
25  Defendants' failure to discuss unjust enrichment
26  precludes a finding in their favor on Plaintiff's eighth
27  claim.  Accordingly, the Court denies Defendants' Motion
28

for Summary Judgment on Plaintiff's claim for Unjust
Enrichment.

## IV. CONCLUSION

For the reasons above, Plaintiff's Motion for Partial
Summary Judgment is GRANTED and Defendants' Motion for
Summary Judgment is DENIED.


Dated: __September 23, 2008__   _____

                                VIRGINIA A. PHILLIPS
                             United States District Judge